# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CU* ANSWERS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| G2LINK, LLC, d/b/a TRUST EXCHANGE | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

CU* Answers, Inc. ("CU*") states as follows for its Complaint against Defendant, G2Link, LLC, d/b/a Trust Exchange ("Trust Exchange"):

## PRELIMINARY STATEMENT

1. Plaintiff, CU*, is compelled to bring this simple breach of contract complaint by Defendant, Trust Exchange's failure to pay the principal due on a $500,000 Convertible Promissory Note.

## PARTIES

2. CU* is a Michigan domestic corporation with its principal place of business located at 6000 28th Street SE, Grand Rapids, Michigan 49546.

3. Trust Exchange is a Pennsylvania limited liability company with its principal place of business at 24 Veterans Square, Media, Pennsylvania 19063.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

6. On or about July 7, 2016, Plaintiff and Defendant executed a Convertible Promissory Note ("the Note"), attached as Exhibit A and incorporated herein by reference.

7. Pursuant to the terms and conditions set forth in the Note, Defendant promised to pay Plaintiff the principal sum of $500,000. (Exhibit A, ¶ 1).

8. Defendant promised to pay simple interest on the outstanding principal due and payable under the Note at the rate of 6% per annum. (Exhibit A, ¶ 2).

9. All outstanding principal and accrued and unpaid interest under the Note was due and payable on July 7, 2017 ("the Maturity Date"), or earlier upon conversion of the Note or a sale of the company as provided in Paragraph 3 of the Note. (Exhibit A, ¶¶ 1, 4).

10. The Note was amended by an Amendment to Convertible Promissory Note, dated July 7, 2017 ("the Amendment"), attached as Exhibit and incorporated herein by reference.

11. Pursuant to the Amendment, the Maturity Date of the Note was extended to July 7, 2018. (Exhibit B, ¶ 1).

12. The Events of Default under the Note are defined in Paragraph 7 of the Note, including but not limited to the failure by Defendant to pay any payment due under the Note on the date the payment becomes due and payable. (Exhibit A, ¶ 7).

13. In the event of a default by Defendant, the Note requires Defendant to pay all of Plaintiff's reasonable attorney fees and court costs incurred in enforcing and collecting the Note. (Exhibit A, ¶ 5).

14. The Note has not been converted in accordance with the terms of Paragraphs 3(a) through (d) of the Note, or satisfied or converted in accordance with Paragraph 3(d) of the Note.

15. The entire outstanding principal balance and accrued interest under the Note became fully due and payable on the Maturity Date of July 7, 2018.

16. Plaintiff demanded full payment in full of the unpaid principal and interest pursuant to a written demand dated August 17, 2018. (Demand Letter, Exhibit C).

17. Defendant has failed and/or refused to pay the unpaid principal balance and interest due on July 7, 2018, the Maturity Date of the Note.

18. Defendant's failure to pay the unpaid principal balance due and payable under the Note by the Maturity Date constitutes an Event of Default under the Note.

19. There is currently due and owing to Plaintiff under the Note the principal balance of $500,000, along with accrued interest through October 22, 2018 in the amount of $505,424.66.

20. Pursuant to Paragraph 5 of the Note, Plaintiff is entitled to recover from Defendant its reasonable attorney fees and court costs incurred in enforcing and collecting the sums due and owing under the Note.

### Count I
### Breach of Contract

21. CU* hereby incorporates by reference its preceding allegations as if fully set forth at length herein.

22. Plaintiff and Defendant entered into a contract, the terms of which are set forth in the Note and the Amendment.

23. Plaintiff performed under the Note and the Amendment.

24. Despite demand for payment, Defendant has failed to pay the principal balance due under the Note and the Amendment.

25. Defendant's failure to pay constitutes a material breach of the Note and Amendment.

26. As a result of Defendant's failure to pay and breach, Plaintiff sustained damages as set forth above.

WHEREFORE, CU* respectfully requests that this Court enter judgment in its favor and against Defedant in the amount of: all sums due and owing under the Note, including unpaid principal in the amount of $500,000; interest through October 22, 2018, in the amount of $5,424.66; interest accruing after October 9, 2018 at the rate of $82.19 per day; reasonable attorney fees and court costs; and such further and other relief as the Court deems just and equitable.

Date: October 22, 2018

Respectfully submitted,

Mathieu J. Shapiro (76266)
Timothy J. Ford (325290)
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
215.665.3000 (p)
215.665.3165 (f)
mathieu.shapiro@obermayer.com
timothy.ford@obermayer.com

# Exhibit A

THE SALE AND ISSUANCE OF THE SECURITIES REPRESENTED BY THIS CONVERTIBLE PROMISSORY NOTE (THIS "*NOTE*") HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "*ACT*"), OR UNDER THE SECURITIES LAW OF ANY STATE OR OTHER JURISDICTION. THESE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE DISTRIBUTION THEREOF. THESE SECURITIES MAY NOT BE OFFERED, SOLD, PLEDGED, OR TRANSFERRED UNLESS (I) A REGISTRATION STATEMENT UNDER THE ACT IS IN EFFECT AS TO THESE SECURITIES AND SUCH OFFER, SALE, PLEDGE OR TRANSFER IS IN COMPLIANCE WITH APPLICABLE SECURITIES LAW OF ANY STATE OR OTHER JURISDICTION, OR (II) AN EXEMPTION THEREFROM IS AVAILABLE AND SUCH OFFER, SALE, PLEDGE OR TRANSFER IS IN COMPLIANCE WITH APPLICABLE SECURITIES LAW OF ANY STATE OR OTHER JURISDICTION.

## CONVERTIBLE PROMISSORY NOTE

$500,000                                                     July ___, 2016

**Philadelphia, Pennsylvania**

For value received G2Link, LLC, a Pennsylvania limited liability company (the "*Company*"), promises to pay to CU*Answers or its assigns ("*Holder*") the principal sum of FIVE HUNDRED THOUSAND DOLLARS $500,000 together with accrued and unpaid interest thereon, each due and payable on the date and in the manner set forth below.

1.  **Repayment.** All payments of interest and principal shall be in lawful money of the United States of America and shall be applied first to accrued interest and thereafter to principal. The outstanding principal amount of this Note shall be due and payable on July ___, 2017 (the "*Maturity Date*"). Accrued and unpaid interest under this Note shall be due and payable in cash upon the Maturity Date or earlier upon conversion of this Note or upon a Sale of the Company as provided in Section 3 below.

2.  **Interest Rate.** The Company promises to pay simple interest on the outstanding principal amount hereof from the date hereof until payment in full, which interest shall accrue on an annual basis at the rate of 6% per annum. Interest shall be calculated on the basis of a 365-day year for the actual number of days elapsed.

3.  **Conversion; Repayment Upon Sale of the Company.**

    (a)   This Note shall be convertible by Holder at any time in Holder's discretion into Preferred Units at a conversion price resulting in the issuance to Holder of Common Units representing 10% of the outstanding equity of the Company after giving effect to such conversion (assuming full conversion or exercise of all convertible and exercisable securities then outstanding (other than the Note) but expressly excluding all units reserved for issuance under any option or similar plan that are not then subject to any outstanding equity or option awards)

(b) In the event that the Company issues and sells shares of its Equity Securities to investors (the "*Investors*") on or before the date of the repayment in full of this Note in an equity financing resulting in gross proceeds to the Company of at least $500,000 (excluding the conversion of the Note and other debt) (a "*Qualified Financing*"), the outstanding principal balance under this Note shall, at Holder's option, (i) automatically convert in whole without any further action by the Holder into such Equity Securities at a conversion price equal to 95% of the per unit price paid by the Investors or (ii) convert into Preferred Units at a conversion price resulting in the issuance to Holder of Preferred Units representing 10% of the outstanding equity of the Company after giving effect to such conversion (assuming full conversion or exercise of all convertible and exercisable securities then outstanding (other than the Note and any such convertible and exercisable securities that are converted or exercised into Equity Securities issued in connection with the Qualified Financing) but expressly excluding all units reserved for issuance under any option or similar plan that are not then subject to any outstanding equity or option awards and excluding the Equity Securities issued by the Company in connection with the Qualified Financing).

(c) In the event that this Note has not been converted pursuant to Sections 3(a) or (b) above prior to the Maturity Date, then, at the election of the Company made at least five days prior to the Maturity Date, effective upon the Maturity Date, the outstanding principal balance under this Note shall be converted into Preferred Units at a conversion price resulting in the issuance to Holder of Preferred Units representing 10% of the outstanding equity of the Company after giving effect to such conversion (assuming full conversion or exercise of all convertible and exercisable securities then outstanding (other than the Note) but expressly excluding all units reserved for issuance under any option or similar plan that are not then subject to any outstanding equity or option awards).

(d) If, after aggregation, the conversion of this Note would result in the issuance of a fractional unit, the Company shall, in lieu of issuance of any fractional unit, pay the Holder otherwise entitled to such fraction a sum in cash equal to the product resulting from multiplying the then current fair market value of one unit of the class and series of membership unit into which this Note has converted by such fraction.

(e) Notwithstanding any provision of this Note to the contrary, in the event that the Company consummates a Sale of the Company (as defined below) prior to the conversion or repayment in full of this Note, the Company will give Holder at least five days prior written notice of the anticipated closing date of such Sale of the Company and, at the option of the Holder, (i) at the closing of such Sale of the Company, the Company will pay the Holder the aggregate amount of principal and interest then outstanding under this Note in full satisfaction of the Company's obligations under this Note or (ii) Holder may elect to convert the Note into Preferred Units at a conversion price resulting in the issuance to Holder of Preferred Units representing 10% of the outstanding equity of the Company after giving effect to such conversion (assuming full conversion or exercise of all convertible and exercisable securities then outstanding (other than the Note) but expressly excluding all units reserved for issuance under any option or similar plan that are not then subject to any outstanding equity or option awards) contingent upon the completion of such Sale of the Company, by tendering this Note for conversion at the chief executive offices of the Company, accompanied by written notice of Holder's election to convert no later than three

(3) business days before the anticipated closing of the Sale of the Company as stated in the notice provided for such Sale of the Company. If Holder does not deliver to the Company such written notice of conversion by the time set forth in the preceding sentence, then the Holder will be deemed to have converted pursuant to clause (ii) above immediately prior to such Sale of the Company if the amount which such Holder is entitled to receive under clause (ii) above is greater than the amount which such Holder is entitled to be repaid under clause (i) above, as determined by the Company's Board of Directors in good faith. If Holder has elected to convert the Note pursuant to clause (ii), or if the Note is deemed to have been converted pursuant to the preceding sentence, then, in such event, in lieu of actually converting the Note, the Company may, at its sole option, pay to Holder the consideration Holder would have received in connection with such Sale of the Company had the Note converted pursuant to clause (ii), including, if applicable, subjecting such consideration to any escrow, earn out or other contingent payment.

(f) For purposes of this Note:

(i) "*Common Units*" shall mean units of the membership interest of the Company designated as "Common Units" pursuant to Section 2.1 of the Operating Agreement.

(ii) "*Equity Securities*" shall mean the Company's Common Units, Preferred Units or any other units of the preferred membership interest of the Company sold in a Qualified Financing or any securities conferring the right to purchase any such units or securities convertible into, or exchangeable for (with or without additional consideration), any such units that sold in a Qualified Financing, except that such defined term shall not include any security granted, issued and/or sold by the Company to any employee, director or consultant in such capacity.

(iii) "*Operating Agreement*" shall mean the Operating Agreement of the Company dated as of January 22, 2011.

(iv) "*Preferred Units*" shall mean a separate class of units of the membership interest of the Company that shall be pari passu in all respects to the Common Units, except that holders of Preferred Units shall receive, prior and in preference to any cash distributions on the Common Units, cumulative cash distributions per Unit at the annual rate of 2.5% of the Preferred Unit Issue Price when, as and if declared by the Company's Board of Managers. Such distributions will accrue whether or not declared and will be cumulative.

(v) "*Preferred Unit Issue Price*" shall mean the price per Preferred Unit determined by dividing the aggregate amount of principal and interest of this Note converted into Preferred Units divided by the number of Preferred Units issued upon such conversion in accordance with the terms hereof.

(vi) "*Sale of the Company*" shall mean (i) any consolidation or merger of the Company with or into any other corporation or other entity or person, or any other corporate reorganization, other than any such consolidation, merger or reorganization in which the equity holders of the Company immediately prior to such consolidation, merger or

reorganization, continue to hold at least a majority of the voting power of the surviving entity in substantially the same proportions (or, if the surviving entity is a wholly owned subsidiary, its parent) immediately after such consolidation, merger or reorganization; (ii) any transaction or series of related transactions to which the Company is a party in which in excess of 50% of the Company's voting power is transferred; provided, however, that a Sale of the Company shall not include any transaction or series of transactions principally for bona fide equity financing purposes in which cash is received by the Company or any successor or indebtedness of the Company is cancelled or converted or a combination thereof; or (iii) a sale, lease, exclusive license or other disposition of all or substantially all of the assets of the Company.

4. **Maturity.** Unless this Note has been previously converted in accordance with the terms of Sections 3(a) through (d) above or satisfied or converted in accordance with the terms of Section 3(d) above, the entire outstanding principal balance and all unpaid accrued interest shall become fully due and payable on the Maturity Date.

5. **Expenses.** In the event of any default hereunder, the Company shall pay all reasonable attorneys' fees and court costs incurred by Holder in enforcing and collecting this Note.

6. **Prepayment.** This Note may be prepaid in whole, but not in part, at any time without premium or penalty, upon not less than 15 days' prior written notice; provided, however, that Holder will have the prior right to convert this Note into Preferred Units at a conversion price resulting in the issuance to Holder of Preferred Units representing 10% of the outstanding equity of the Company after giving effect to such conversion (assuming full conversion or exercise of all convertible and exercisable securities then outstanding (other than the Note) but expressly excluding all units reserved for issuance under any option or similar plan that are not then subject to any outstanding equity or option awards).

7. **Default.** If there shall be any Event of Default hereunder, at the option and upon the declaration of the Requisite Holders and upon written notice to the Company (which election and notice shall not be required in the case of an Event of Default under Section 7(c) or 7(d)), this Note shall accelerate and all principal and unpaid accrued interest shall become due and payable. The occurrence of any one or more of the following shall constitute an "*Event of Default*":

(a) The Company fails to pay timely any of the principal amount due under this Note on the date the same becomes due and payable or any accrued interest or other amounts due under this Note on the date the same becomes due and payable;

(b) The Company shall default in its performance of any covenant under this Note;

(c) The Company files any petition or action for relief under any bankruptcy, reorganization, insolvency or moratorium law or any other law for the relief of, or relating to, debtors, now or hereafter in effect, or makes any assignment for the benefit of creditors or takes any corporate action in furtherance of any of the foregoing; or

4

(d)     An involuntary petition is filed against the Company (unless such petition is dismissed or discharged within 60 days under any bankruptcy statute now or hereafter in effect, or a custodian, receiver, trustee, assignee for the benefit of creditors (or other similar official) is appointed to take possession, custody or control of any property of the Company.

8.     **Waiver.** The Company hereby waives demand, notice, presentment, protest and notice of dishonor.

9.     **Governing Law.** This Note shall be governed by and construed under the laws of the Commonwealth of Pennsylvania, as applied to agreements among Pennsylvania residents, made and to be performed entirely within the Commonwealth of Pennsylvania, without giving effect to conflicts of laws principles.

10.    **Modification; Waiver.** Any term of this Note may be amended or waived with the written consent of the Company and Holder.

11.    **No Security Interest.** This Note shall be a general unsecured obligation of the Company and will be subordinated to all future bank and/or similar indebtedness of the Company and upon the request of any such lender the Holder shall execute such documentation necessary to reflect such subordination.

12.    **Assignment.** This Note may be transferred only upon its surrender to the Company for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Company. Thereupon, this Note shall be reissued to, and registered in the name of, the transferee, or a new Note for like principal amount and interest shall be issued to, and registered in the name of, the transferee. Interest and principal shall be paid solely to the registered holder of this Note. Such payment shall constitute full discharge of the Company's obligation to pay such interest and principal.

13.    **Notice of Certain Events.** The Company shall promptly advise the Holder orally and in writing of any Acquisition Proposal, any request for information with respect to any Acquisition Proposal, or any inquiry with respect to or which could reasonably be expected to result in an Acquisition Proposal, the material terms and conditions of such request, Acquisition Proposal or inquiry, and the identity of the entity or person making the same. For purposes hereof, "*Acquisition Proposal*" means any inquiry, proposal or offer from any entity or person relating to a Sale of the Company.

[signature page follows]

July __, 2016

CONFIDENTIAL

CU*Answers
[Address]
[Address]

Ladies and Gentlemen:

Reference is made to the Operating Agreement of G2Link, LLC, a Pennsylvania limited liability company (the "Company"), a copy of which is attached hereto as Exhibit A (the Operating Agreement"). The undersigned, Edward J. Sullivan IV and Edward J. Sullivan V (collectively, the "Founders"), are the holders of all of the membership interests of the Company outstanding as of the date of this letter (this "Agreement"). Capitalized terms used and not defined herein have the meanings given them in the Operating Agreement.

Simultaneous with the execution and delivery of this Agreement, you are executing and delivering a Subscription Agreement with the Company (the "Subscription Agreement") pursuant to which the Company will issue and deliver to you a Convertible Promissory Note of the Company in the principal amount of $500,000 (the "Note") in accordance with the terms and conditions set forth therein.

This letter (this "Agreement") will confirm the agreement of the Founders regarding your rights to designate one of Managers to the Board of the Company in connection with your purchase of the Note pursuant to the Subscription Agreement.

In order to induce you to purchase the Note and invest funds in the Company pursuant to the Subscription Agreement, the Founders hereby agree to vote, or cause to be voted, all membership interests of the Company owned by them, or over which they have voting control, and to exercise all of their rights under the Operating Agreement, from time to time and at all times, in whatever manner as shall be necessary to ensure that at each annual or special meeting of Members at which an election of Managers is held or pursuant to any written consent of the Members, one person designated by you shall be elected to the Board of Governors pursuant to Sections 3.1 and 3.2 of the Operating Agreement.

The Founders also agree to vote, or cause to be voted, all membership interests of the Company owned by them, or over which they have voting control, and to exercise all of their rights under the Operating Agreement, from time to time and at all times, in whatever manner as shall be necessary to ensure that: (i) no Manager elected pursuant to the paragraph above may be removed from office unless such removal is directed or approved by you; (ii) any vacancy created by the resignation, removal or death of such Manager shall be filled pursuant to the provisions of above; and (iii) upon your written request to remove such Manager, such Manager shall be removed.

The Members agree to execute any written consents required to perform their obligations set forth above.

LEGAL\27342002\2

This Agreement shall be effective as of the date hereof and shall continue in effect until the earlier to occur of (i) repayment in full of the Note in cash by the Company, (ii) if the Note is converted into equity securities of the Company, the date on which you no longer hold any of the equity securities issued upon conversion of the Note, (iii) upon consummation of a Sale of the Company (as defined in the Note) or (iii) upon the mutual written agreement of the parties.

This Agreement contains the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, whether written or oral, relating to such subject matter in any way. This Agreement may not be amended except in a writing executed by both parties. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns. This Agreement may be executed simultaneously in counterparts (including by means of facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same agreement. This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania.

[Remainder of Page Intentionally Left Blank]

LEGAL\027342002\2

If the foregoing terms and conditions correctly sets forth your understanding with respect to the matters described herein, please indicate by executing a copy of this letter agreement as provided below and returning the same to the undersigned.

Very truly yours,

Founders:

_____
Edward I. Sullivan IV

_____
Edward J. Sullivan V

ACCEPTED AND AGREED:

CU*ANSWERS

By:_____
Name:
Title:

**IN WITNESS WHEREOF**, the Company has caused this Note to be duly executed and delivered by its authorized officer, as of the date first above written.

G2LINK, LLC

By: _____
Name: Edward G. Sullivan
Title: CEO

[SIGNATURE PAGE TO CONVERTIBLE PROMISSORY NOTE OF G2LINK, LLC]

# Exhibit B

# AMENDMENT TO CONVERTIBLE PROMISSORY NOTE

THIS AMENDMENT TO CONVERTIBLE PROMISSORY NOTE (this "Amendment") is entered into effective as of July 7, 2017, by and between G2Link, LLC, a Pennsylvania limited liability company (the "Company"), CU*Answers, Inc., A Credit Union Service Organization or its assigns ("Holder").

WHEREAS, the Company previously issued to Holder a Convertible Promissory Note, dated July 7, 2016, in the original principal amount of $500,000.00 (the "Note"); and

WHEREAS, the Company and Holder desire to amend certain terms of the Note in accordance with the terms of this Amendment.

NOW, THEREFORE, in consideration of the foregoing, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned parties hereby agree as follows:

1. *Amendment to Maturity Date.* The Maturity Date of the Note and the definition thereof set forth in Section 1 of the Note is hereby extended to and shall hereafter be for all purposes of the Note July 7, 2018.

2. *No Waiver.* Nothing contained in this Amendment constitutes a waiver or release of any rights or remedies available to Holder under the Note or at law or in equity.

3. *Construction.* Any capitalized terms used in this Amendment not otherwise defined shall have the meaning as set forth in the Note. All references to the Note in this Amendment in the Note shall be deemed to be a reference to the Note, as amended hereby. All other provisions of the Note not amended or modified herein shall continue to have their full force and effect.

4. *Governing Law.* This Amendment shall be governed and construed under the laws of the Commonwealth of Pennsylvania, as applied to agreements among Pennsylvania residents, made and to be performed entirely within the Commonwealth of Pennsylvania, without giving effect to conflicts of laws principles.

5. *Counterparts.* This Amendment may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same agreement. Each party acknowledges that an original signature or a copy thereof transmitted by facsimile or Adobe (.pdf) format shall constitute an original signature for purposes of this Amendment.

[Remainder Intentionally Left Blank]

IN WITNESS WHEREOF, this Amendment is executed by the undersigned parties as of the date first written above.

G2LINK, LLC

By: /s/ Edward J. Sullivan, IV
Name: Edward J. Sullivan, IV
Title: Chairman

CU*ANSWERS

By: /s/ Randy Karnes
Name: Randy Karnes
Title: CEO

# Exhibit C



Bridgewater Place • Post Office Box 352
Grand Rapids, Michigan 49501-0352
Telephone 616 / 336-6000 • Fax 616 / 336-7000 • www.varnumlaw.com

**Harvey Koning**

Direct: 616 / 336-6588
hkoning@varnumlaw.com

August 17, 2018

*Via Overnight Courier*

Trust Exchange
Attn: Mr. Edward Sullivan
24 Veterans Square
Media, PA  19063

      Re:    Notice of Default

Dear Trust Exchange:

    Our office represents CU*Answers. On or about July 2016, Trust Exchange, f/k/a G2Link, LLC ("Trust Exchange") executed a Convertible Promissory Note in favor of CU*Answers in the principal amount of $500,000.00, as amended by an Amendment to Convertible Promissory Note dated July 7, 2017 (collectively, the "Note").

    The Note matured on July 7, 2018 ("the Maturity Date"); Paragraph 5 of the Convertible Promissory Note states:

> **4.** **Maturity.** Unless this Note has been previously converted in accordance with the terms of Sections 3(a) through (d) above or satisfied or converted in accordance with the terms of Section 3(d) above, the entire outstanding principal balance and all unpaid accrued interest shall become fully due and payable on the Maturity Date.

    The Maturity Date of the Note was extended to July 7, 2018, by the Amendment to Convertible Promissory Note:

> **1.** **Amendment to Maturity Date.** The Maturity Date of the Note and the definition thereof set forth in Section 1 of the Note is hereby extended to and shall hereafter be for all purposes of the Note July 7, 2018.



The Note was not converted prior to the Maturity Date in accordance with Sections 3(a) through (d) of the Note, and therefore the entire outstanding balance of the Note is now fully due and payable. The outstanding balance of the Note, through August 17, 2018, is $563,369.86, including the principal balance of $500,000.00 and accrued interest of $63,369.86. Pursuant to paragraph 4 of the Convertible Promissory Note, CU*Answers is also entitled to recover all reasonable attorney fees and court costs incurred in enforcing and collecting the Note.

CU*Answers hereby demands immediate payment in full of sums due and owing under the Note. Please contact the undersigned if you have any questions.

Very truly yours,

VARNUM

Harvey Koning

HK/dkr
cc: Randy Karnes, CU*Answers
     Patrick Sickels, CU*Answers

13772827_1.docx