**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CU\*ANSWERS, INC.,** *Plaintiff*, v. **G2LINK, LLC, d/b/a TRUST EXCHANGE,** *Defendant*. | Case No. 2:18-cv-4525-JDW |

## ORDER

**AND NOW**, this 5th day of December, 2019, upon consideration of Defendant's Motion for Summary Judgment (ECF No. 26), Plaintiff's Motion for Summary Judgment (ECF No. 28), all oppositions and replies, and all accompanying documents, the Court finds as follows:

1. On July 7, 2016, the Parties executed a Convertible Promissory Note (the "Note") by which Defendant G2Link, LLC promised to pay Plaintiff CU*Answers, Inc. a principal amount of $500,000, with interest. (ECF No. 27-1.) By way of an amendment to the Note (the "Amendment"), the Parties extended the Note's Maturity Date to July 7, 2018. (ECF No. 27-3.) G2Link has never repaid the Note;

2. Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). "When confronted with cross-

motions for summary judgment 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Canal Ins. Co. v. Underwriters at Lloyd's London*, 333 F. Supp. 2d 352, 353 n.1 (E.D. Pa. 2004), *aff'd*, 435 F.3d 431 (3d Cir. 2006);

3. The Parties agree that CU*Answers' claim for breach of contract turns on the interpretation of Section 3(b) of the Note. That provision states:

> In the event that [G2Link] issues and sells shares of its Equity Securities to investors (the "***Investors***") on or before the date of the repayment in full of this Note in an equity financing resulting in gross proceeds to [G2Link] of at least $500,000 (excluding the conversion of the Note and other debt) (a "***Qualified Financing***"), the outstanding principal balance under this Note shall, at [CU*Answers'] option, (i) automatically convert in whole without any further action by [CU*Answers] into such Equity Securities at a conversion price equal to 95% of the per unit price paid by the Investors or (ii) convert into Preferred Units at a conversion price resulting in the issuance to [CU*Answers] of Preferred Units representing 10% of the outstanding equity of [G2Link] after giving effect to such conversion (assuming full conversion or exercise of all convertible and exercisable securities then outstanding (other than the Note and any such convertible and exercisable securities that are converted or exercised into Equity Securities issued in connection with the Qualified Financing) but expressly excluding all units reserved for issuance under any option or similar plan that are not then subject to any outstanding equity or option awards and excluding the Equity Securities issued by [G2Link] in connection with the Qualified Financing).

(ECF No. 27-1 at 3(b)) (original emphasis);

4. The Note defines Equity Securities as:

> [G2Link's] Common Units, Preferred Units or any other units of the preferred membership interest of [G2Link] sold in a Qualified Financing or any securities conferring the right to purchase any such units or securities convertible into, or exchangeable for (with or without additional consideration), any such units that sold in a Qualified Financing, except that such defined term shall not include any security granted, issued and/or sold by [G2Link] to any employee, director or consultant in such capacity.

(*Id.* at 3(f)(ii));

2

5. Prior to the date that the Note was due to be paid in full, G2Link entered into a series of Simple Agreement for Future Equity agreements ("SAFEs") that gave investors the right to acquire an interest in G2Link at some point in the future. (*See, e.g.*, ECF Nos. 27-4 – 27-15);

6. The Parties dispute whether those SAFEs constitute Equity Securities and thus, whether a Qualified Financing took place. If a Qualified Financial took place, then that event would relieve G2Link of its obligation to repay the Note;

7. Contract interpretation is a legal issue for the Court to resolve. *See In re Energy Future Holdings Corp.*, 842 F.3d 247, 253 (3d Cir. 2016); *Commonwealth of Pennsylvania v. UPMC*, 208 A.3d 898, 910 (Pa. 2019) ("[U]nambiguous contracts are interpreted by the court as a matter of law[.]") (quotation omitted);

8. CU*Answers first contends that G2Link's issuance of SAFEs to investors does not constitute a Qualified Financing under Section 3(b) of the Note because SAFEs cannot be divided into shares or units, and Section 3(b) is triggered only when G2Link issues and sells "shares" of its Equity Securities. (ECF No. 28 ¶¶ 5-6.) Similarly, CU*Answers also argues that because a SAFE is not equity, issuing a SAFE to an investor does not constitute "equity financing" under Section 3(b). (*Id.* at ¶¶ 2-4);

9. While the Note does not define the terms "shares," "units," or "equity financing," the definition of Equity Securities includes non-equity securities. (*See* ECF No. 27-1 at 3(f)(ii) (including "any securities conferring the right to purchase any such units or securities convertible into, or exchangeable for (with or without additional consideration), any such units that sold in a Qualified Financing").) Thus, the Parties contemplated that securities other than actual shares or equity units might be sold in a Qualified Financing. Moreover, CU*Answers acknowledges that the SAFEs provide purchasers the ability to acquire an equity interest in G2Link at some point in

3

the future. (ECF No. 31 at 3-4.) To interpret Section 3(b) as CU*Answers suggests would render the provision meaningless—something the Court cannot do. *See Canfield v. Statoil USA Onshore Props. Inc.*, No. CV 3:16-0085, 2017 WL 2535941, at *5 (M.D. Pa. June 12, 2017) ("A contract should not be interpreted in a way that leads to an absurdity or renders the contract ineffective to accomplish its purpose.") (quoting *See Clairton Slag, Inc. v. Dep't of Gen. Servs.*, 2 A.3d 765, 773 (Pa. Commw. Ct. 2010)). Thus, the Court concludes that the sale of the SAFEs at issue can constitute a Qualified Financing;

10. Next, CU*Answers contends that SAFEs do not constitute Equity Securities under Section 3(f)(ii) because they "do not give the purchaser an unconditional right to purchase [G2Link's] stock. Rather, [they give] the SAFE purchaser a conditional right to purchase stock only in the event certain triggering 'Events' occur in the future." (ECF No. 31 at 3);

11. At the time the Parties executed the Note, a "right" was defined as "[s]omething that is due to a person by just claim, legal guarantee, or moral principle[.]" *Black's Law Dictionary* 1517 (Bryan Garner ed., 10th ed. 2014). Moreover, a conditional right is just one of many different varieties of a right. *See id.* at 1518;

12. CU*Answers offers no reason why the word "right" is ambiguous or why the Court should interpret it to refer only to unconditional rights. To do so would be to rewrite the Note, and the Court may not insert additional terms into the Parties' agreement. *See Glob. Ground Support, LLC v. Glazer Enters., Inc.*, No. 05-cv-4373, 2006 WL 208639, at *5 (E.D. Pa. Jan. 24, 2006) (court "cannot reject what the parties inserted or insert what the parties elected to omit"). Pursuant to the clear language of the Note, SAFEs can constitute Equity Securities because they confer on investors the conditional right to purchase G2Link units upon certain triggering events;

4

13. The Court also rejects CU*Answers' argument that the SAFEs cannot constitute Equity Securities because they do not give investors the right to purchase shares of G2Link, which is currently a limited liability company that does not have shares. (ECF No. 31 at 5.) As an initial matter, Section 3(f)(ii) is not limited to the right to purchase "shares." Instead, the relevant portion of Section 3(f)(ii) refers to "units or securities." In fact, the word "shares" does not appear anywhere in the definition of Equity Securities. Moreover, as G2Link points out, nothing prevents G2Link from converting into a corporation capable of issuing shares at a later date. (ECF No. 26-1 at 4);

14. Lastly, CU*Answers contends that even if SAFEs can qualify as Equity Securities under Section 3(f)(ii), G2Link cannot satisfy the monetary threshold needed to establish a Qualified Financing under the Note because the specific SAFEs issued to Lance Walter and Ken Goldberg were not Equity Securities, as both men were employees, directors, or consultants of G2Link. (*See* ECF No. 27-1 at 3(f)(ii) (stating that "Equity Securities" "shall not include any security granted, issued and/or sold by [G2Link] to any employee, director or consultant in such capacity").) In support of this argument, CU*Answers put forth evidence demonstrating that Lance Walter and Ken Goldberg provided consultation and/or advising services for G2Link. (ECF No. 28 at pages 41-44 & 73 of 101);

15. There is a genuine, material dispute as to whether G2Link sold SAFEs to Ken Goldberg as an investor or in his capacity as a G2Link employee, director, or consultant. In asserting that Ken Goldberg purchased two SAFEs as an investor, G2Link points to the fact that Ken Goldberg's wife, Victoria, is a co-signatory on a SAFE dated October 1, 2017. (ECF No. 28 at pages 46 & 50 of 101.) In addition, the Court notes that while Victoria Goldberg did not sign the second SAFE from December 14, 2017, she is nevertheless listed on it as an investor. (*Id.* at

pages 51 & 54 of 101.) Victoria Goldberg appears to have no professional connection to G2Link, and her inclusion on the SAFEs along with her husband is sufficient to raise a dispute as to whether Ken Goldberg obtained the SAFEs in his capacity as co-investor with his wife or as a G2Link employee, director, or consultant; and

16. Resolution of this dispute will determine whether G2Link sold at least $500,000 of Equity Securities and thus whether a Qualified Financing took place. The disputed fact is therefore material, and the Court cannot resolve it on a Motion for Summary Judgment.

In light of the foregoing, it is **ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 26) and Plaintiff's Motion for Summary Judgment (ECF No. 28) are both **DENIED**.

It is **FURTHER ORDERED** that the Court will hold a telephone status conference on **December 9, 2019** at 3:30 p.m. Plaintiff's counsel shall initiate the call and contact Chambers (267-299-7320) when all Parties are on the line.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.