IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CU\*ANSWERS, INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**G2LINK, LLC,**<br><br>*Defendant.* | Case No. 2:18-CV-04525-JDW |

## MEMORANDUM

### I. FACTUAL BACKGROUND

This dispute arises out of a Convertible Promissory Note (the "Note") that the Parties executed on July 7, 2016. In the Note, Defendant G2Link, LLC promised to pay Plaintiff CU\*Answers, Inc. a principal amount of $500,000, with interest. By way of an amendment to the Note (the "Amendment"), the Parties extended the Note's Maturity Date to July 7, 2018. G2Link has never repaid the Note. The Note includes a conversion provision that relieves G2Link of its repayment obligation in the event of a "Qualified Financing." G2Link entered into a series of Simple Agreement for Future Equity agreements ("SAFEs") with investors. At issue in the case is whether G2Link triggered a Qualified Financing when it entered into those agreements.

On October 9, 2019, each Party filed a motion for summary judgment. CU\*Answers supported its motion with, among other things, an expert report from Elizabeth Sigety, an attorney with Fox Rothschild LLP. In her report, Ms. Sigety opines that "(a) the issuance of a SAFE does not satisfy the requirements of a Qualified Financing and (b) the right of the Plaintiff to repaid [sic] under the Note matures on the Maturity Date and therefore a Qualified Financing must occur prior to the Maturity Date." (ECF No. 37-1 at 4.)

On December 5, 2019, the Court denied both Parties' motions for summary judgment. In its decision, the Court concluded that—as a legal matter—the SAFEs can constitute "Equity Securities" under the Note, as required to trigger a Qualified Financing. However, the Court held that there is a genuine material dispute as to whether G2Link sold SAFEs to Kenneth Goldberg as an investor or in his capacity as a G2Link employee, director, or consultant, and therefore, whether—as a factual matter—a Qualified Financing took place. On November 25, 2019, G2Link moved to exclude Ms. Sigety's testimony on the basis that it renders a legal conclusion rather than assists the trier of fact with understanding the evidence or determining a fact in dispute.

## II. LEGAL STANDARD

District courts perform a gatekeeping function to ensure that expert testimony meets the requirements of Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 states that expert testimony is permissible when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. While Federal Rule of Evidence 704 allows experts to provide an opinion about the "ultimate issue" in a case, the Third Circuit has made clear that Rule 704 "prohibits experts from opining about the ultimate legal conclusion or about the law or legal standards." *Patrick v. Moorman*, 536 Fed. App'x 255, 258 (3d Cir. 2013). In the absence of specialized trade usage, this prohibition extends to expert testimony on the construction of a contract and application of that construction to the claim. *See In re Downey Fin. Corp.*, 593 Fed. App'x 123, 126 n.3 (3d Cir. 2015) ("Contract interpretation is a legal question for which the court does not require expert opinion."); *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253 (3d Cir. 2016) ("Contract interpretation is a legal issue for the Court to resolve.").

**III.     ANALYSIS**

Ms. Sigety's expert report offers inadmissible testimony regarding her interpretation of the language in the Note, its defined terms, and the Parties' obligations. In effect, the report has two parts. The first part analyzes whether a SAFE constitutes equity under Section 3(b) of the Note. That question, however, is a question of contract interpretation. "In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language." *U.S., ex rel. Palmer v. C & D Techs., Inc.*, No. CIV.A. 12-907, 2015 WL 4470291, at *6 (E.D. Pa. July 22, 2015). Ms. Sigety does not identify any evidence of specialized trade usage. Rather, she offers information about whether or not SAFEs constitute equity, including based on her experience with other contracts for SAFEs. The Court, however, has already determined that SAFEs can be "Equity Securities" under the terms of the Note (ECF No. 40 at 6.), and therefore, Ms. Sigety's interpretation of Section 3(b) invades the province of the Court. Ms. Sigety's testimony about notices is also irrelevant because—as Ms. Sigety acknowledges—the Note did not require them. (ECF No. 31-1 at 7.) Finally, nowhere in her report does Ms. Sigety address the factual issue for trial of whether G2Link sold SAFEs to Kenneth Goldberg as an investor or in his capacity as a G2Link employee, director, or consultant, which will resolve the question of whether a Qualified Financing took place.

The second part of Ms. Sigety's report opines that the entire principal balance was due under the Note because no Qualified Financing occurred. Ms. Sigety's opinion does nothing more than interpret the Note. It does not offer specialized knowledge or evidence of custom and usage. It does include a passing reference to what is "customary" in the industry, but she offers no basis for her opinion about industry custom. To the extent the opinion constitutes an assertion about

3

industry custom, it is nothing more than her *ipse dixit* and therefore inadmissible. *See Heichel v. Marriott Hotel Svcs., Inc.*, Civ. A. No. 18-1981, 2019 WL 2202759, at *4 (E.D.Pa. May 20, 2019).

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Exclude Expert Opinions and Testimony of Elizabeth Sigety. An appropriate Order follows.

                                         **BY THE COURT:**

                                        */s/ Joshua D. Wolson*
                                        JOSHUA D. WOLSON, J.

Dated: December 31, 2019